UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PETER HWANG | CIVIL ACTION |
| v. | NO.: |
| JENNIFER CAMPBELL and CLIFF DAVIS | SECTION: |
| | JUDGE: |
| | MAG. JUDGE: |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes plaintiff, Peter Hwang (sometimes hereinafter "Purchaser"), and for such respectfully states as follows:

## THE PARTIES

**1.**

Plaintiff, Peter Hwang, is an individual of the full age of majority and is a resident of the State of Washington. Accordingly, Mr. Hwang is a Washington citizen for the purposes of diversity of citizenship jurisdiction.

**2.**

Defendant, Jennifer Campbell, (sometimes hereinafter "Seller") is an individual of the full age of majority and, upon information and belief, is a resident of the State of California. Accordingly, Ms. Campbell, is a California citizen for the purposes of diversity of citizenship jurisdiction.

**3.**

Defendant, Cliff Davis is an individual of the full age of majority and, upon information and belief, is a resident of the State of California. Accordingly, Mr. Davis, is a California citizen for the purposes of diversity of citizenship jurisdiction.

## JURISDICTION

**4.**

This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, excluding interest and costs, and defendants Jennifer Campbell and Cliff Davis (upon information and belief, citizens of California) are diverse in citizenship from plaintiff (a citizen of Washington) as this is a dispute between citizens of different states. 28 U.S.C. § 1332(a).

**5.**

This Court has personal jurisdiction over defendant Jennifer Campbell because she regularly transacts business in Louisiana, resided in Louisiana until December 2020 or later, and the causes of action asserted against her herein arise out of her transacting business in the State of Louisiana.

**6.**

This Court has personal jurisdiction over defendant Cliff Davis because he regularly transacts business in Louisiana, resided in Louisiana until December 2020 or later, and the causes of action asserted against him herein arise out of his transacting business in the State of Louisiana.

## VENUE

**7.**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of  the events or omissions giving rise to Plaintiff's claims against Defendants occurred in the

Eastern District of Louisiana and the location of the business subject of this controversy is in the Eastern District of Louisiana.

## FACTS

### 8.

In the latter part of 2018, Peter Hwang began to contemplate the acquisition of a retail grocery store business.

### 9.

Peter Hwang identified an opportunity to purchase a grocery store located at 925 Behrman Highway, Suite 3, in Gretna, Louisiana 70056 and began discussions about a possible purchase with Jun Li, a business broker with Transworld Business Advisors.

### 10.

Preliminary discussion between Peter Hwang and Jun Li revealed that the grocery store might have been under contract with another interested purchaser.

### 11.

After the passage of some time, Jun Li contacted Peter Hwang to advise him that the purchase did not work out, and that the grocery store was again being offer for sale.

### 12.

Jun Li then introduced Peter Hwang to Jennifer Campbell, the owner of the grocery store located at 925 Behrman Highway, Suite 3, Gretna, Louisiana 70056, a/k/a JenCam Food Market, LLC d/b/a Hong Kong Food Market (the "Business").

### 13.

Through the business broker, Jun Li, Peter Hwang began to coordinate negotiations with Jennifer Campbell, and her husband, Cliff Davis, regarding the potential acquisition of the Business.

**14.**

Even though Jennifer Campbell was the registered and nominal owner of the business, it became very apparent to Peter Hwang from early dealings that Cliff Davis was acting for and on behalf of the business as its spokesperson and point of contact for information exchange and negotiations.

**15.**

Throughout the negotiations, contract amendments, and in all significant steps of the process, Cliff Davis was involved as a principal or material contact, acting with authority to speak for and on behalf of the Business.

**16.**

Cliff Davis sent numerous emails and communications to Peter Hwang and others directly regarding Business operations, procedure, and practices. It was through those communications that Peter Hwang learned of Cliff Davis' extremely active role in the management and operation of the Business.

**17.**

By late November 2019, the Parties had reached preliminary sale terms, and on or about November 26 or 27, 2019, Peter Hwang and Jennifer Campbell, respectively, executed and entered into a Business Sale Offer and Acceptance Agreement (the "Agreement") attached hereto as Exhibit "A."

**18.**

Jun Li, as representative of Transworld Business Advisors, Escrow Agent and Broker for the Agreement, signed the Joinder portion of the Agreement.

4

4823-9903-9485 v1

**19.**

The Agreement originally contemplated the sale of the Business as an entity, and not as the sale of the Seller's membership interest in the Business.

**20.**

The Agreement contemplated an initial closing date of March 31, 2020.

**21.**

During the sale negotiations Peter Hwang coordinated with, met with, spoke with, and exchanged documentation and communications with Jennifer Campbell and Cliff Davis.

**22.**

The Agreement contained an Addendum dated November 27, 2019, which was also executed by and between Peter Hwang and Jennifer Campbell. The November 27, 2019 Addendum, attached hereto as Exhibit "B," provided that Peter Hwang's obligation to purchase the Business from Jennifer Campbell was subject to and contingent upon securing a loan of not less than $4,350,000.00.

**23.**

On or about December 30, 2019, Peter Hwang and Jennifer Campbell executed an Escrow Agreement, attached hereto as Exhibit "C," along with escrow agent Greg Haekl of Kansas Second Title, Inc., and deposited with Kansas Second Title, Inc. a copy of the Agreement and $250,000.00 provided by Peter Hwang.

**24.**

Business broker, Jun Li, introduced Peter Hwang to A. Greg Sohmer a/k/a Greg Sohmer, a professional business consultant. At some time after that introduction, Greg Sohmer d/b/a Plymouth Rock Capital reached out to Peter Hwang and offered his professional consulting services in connection with Peter Hwang's proposed acquisition of the Business.

4823-9903-9485 v1

**25.**

In February 2020, Peter Hwang and Greg Sohmer entered into a consulting relationship in furtherance of the Business sale.

**26.**

Greg Sohmer, having been retained by Peter Hwang to coordinate various aspects of the transaction, including due diligence and identification of a lending source, among other responsibilities, coordinated with Jennifer Campbell, Cliff Davis, and Jun Li to facilitate, and conduct due diligence for, the transaction.

**27.**

On or about February 15, 2020, Peter Hwang and Jennifer Campbell executed an Addendum to the Agreement extending the initial closing date of March 31, 2020 to June 30, 2020. The February 15, 2020 Addendum is attached hereto as Exhibit "D."

**28.**

Peter Hwang continued to prepare for and coordinate actions requisite to closing the purchase of the Business, but due to unforeseen circumstances related to COVID-19, the lockdown of the country, and the interruption of the loan application process, the closing date, as amended, was again delayed.

**29.**

On or about June 26, 2020, Peter Hwang and Jennifer Campbell executed an Addendum to the Agreement extending the closing date to July 31, 2020. The June 26, 2020 Addendum is attached hereto as Exhibit "E."

4823-9903-9485 v1

**30.**

As the Parties continued to coordinate their efforts to close the purchase of the Business, additional circumstances, including more time needed for the loan application, required an additional extension of the closing date, which was agreed.

**31.**

On or about August 26, 2020, Peter Hwang and Jennifer Campbell executed an Addendum to the Agreement changing the structure of the sale from that of the Business to a "Membership Sale" whereby Jennifer Campbell agreed to sell to Peter Hwang 100% of her membership interest in the Business.  The August 26, 2020 Addendum is attached hereto as Exhibit "G."

**32.**

The August 26, 2020 Addendum, Exhibit "G," also provided that the newly-structured transaction should close on October 1, 2020.

**33.**

The Parties continued to coordinate efforts in furtherance of an October 1, 2020 Closing.

**34.**

On or about September 16, 2020, Peter Hwang and Jennifer Campbell executed an Addendum to the Agreement changing the Seller to Jennifer Campbell, as 100% interest owner of the Business, and confirming the new closing date of October 1, 2020. The September 16, 2020 Addendum is attached hereto as Exhibit "H."

**35.**

The Parties continued to coordinate efforts in furtherance of an October 1, 2020 Closing.

**36.**

The Parties agreed to work with Ellis Roussel, a certified public accountant with LeGlue & Company CPAs, to coordinate accounting issues related to the closing of the sale of the Business, the post-closing true-up, and the calculation of credits and purchase price adjustments.

**37.**

Upon information and belief, Jennifer Campbell coordinated with Ellis Roussel, CPA, and Jun Li, the business broker, and perhaps others, to draft an Addendum to the Agreement, dated September 25, 2020, which set forth specific mechanisms for adjusting the Purchase Price, as defined in and later amended by the Agreement. The September 25, 2020 Addendum is attached hereto as Exhibit "I."

**38.**

The September 25, 2020 Addendum (Exhibit "I"), contained a specific reference to a post-closing Purchase Price calculation through a "true-up" process, which would require the cooperation of the Parties in providing certain requested information to Ellis Roussel so that he might perform the true-up and calculate the final Purchase Price.

**39.**

The September 25, 2020 Addendum (Exhibit "I") also contained specific references regarding payment of the Purchase Price, the October 1, 2020 closing date, and various obligations of Jennifer Campbell and Peter Hwang included in the Agreement.

**40.**

The Agreement set forth obligations by Jennifer Campbell to assist with training Peter Hwang's managers, to assist with managing Business employees, to manage accounts payable, and to facilitate the transition of the business relationships with all vendors from Seller to Purchaser.

8

**41.**

The Parties agreed to proceed with an October 1, 2020 sale of 100% of Jennifer Campbell's membership interest.

**42.**

On or about September 30, 2020, Jennifer Campbell and Peter Hwang executed an Election and Consent document, which evidenced the sale to Peter Hwang and termination of the entire membership interest of Jennifer Campbell, with a date of termination effective on October 1, 2020. The October 1, 2020 Election and Consent to terminate Jennifer Campbell's membership interest in the Business is attached hereto as Exhibit "J."

**43.**

Through the agreement and understanding of the Parties, the October 1, 2020 termination of membership interest of Jennifer Campbell in the Business constituted a "soft closing," following which purchaser, Peter Hwang, immediately began his transition into ownership and operation of the Business.

**44.**

The concept of the soft closing was established between the Parties, and further developed by and implemented with the coordination of the Business accountant Ellis Roussel and the Business broker, Jun Li.

**45.**

At or around the time of the October 1, 2020 closing, Peter Hwang had paid all consideration due under the Agreement, subject to the final accounting and true-up calculation.

**46.**

The Parties contemplated a second closing (the "Second Closing") following the transitional period of Peter Hwang's ownership and joint operation of the Business by the Parties.

While the first closing focused on the transfer of ownership of Jennifer Campbell's membership interest in the Business to Peter Hwang, allowed for the transitional operation and training period, and served as a mechanism for Peter Hwang to pay the purchase consideration to Jennifer Campbell, the Second Closing served to facilitate a financing cash-out by Peter Hwang, and to reconcile certain adjustments to the Purchase Price as between Peter Hwang and Jennifer Campbell.

**47.**

Immediately following the October 1, 2020 closing, on or about October 2, 2020, Peter Hwang, having already contributed $4,400,000.00 towards the Purchase Price, paid an additional $215,000.00 to Jennifer Campbell.

**48.**

After Peter Hwang began his transitional operation of the Business, on or about October 5, 2020, following the October 1, 2020 termination by sale of Jennifer Campbell's interest in the Business, Peter Hwang and Jennifer Campbell agreed to again amend the final payment obligations under the Agreement, and to extend the date of the Second Closing, to November 15, 2020. The October 5, 2020 Addendum is attached hereto as Exhibit "K." But the Second Closing did not occur on November 15, 2020.

**49.**

On or about October 9, 2020, in furtherance of amended payment procedures agreed by and between the Parties, Peter Hwang paid an additional $250,000.00 to Jennifer Campbell.

**50.**

Accepting his ownership and operational role in the Business Peter Hwang moved his two managers to New Orleans from Washington, to begin working at the Business and carry out the

10

process of assuming hands-on operational control, and to participate in the in-store operational and procedure training, as required by the Agreement.

**51.**

In the first couple of weeks following the October 1, 2020 Closing, Peter Hwang was added to and provided with access to the Business banking and ownership records.  Peter Hwang was permitted to set up his loan repayment obligations from the Business operating account. Peter Hwang was provided keys to the Business and to its on-premise cash safe. Peter Hwang was provided with account numbers, access codes, passwords, and security codes in full recognition of his ownership and operator status. Peter Hwang's managers began working in the Business and began learning their roles at the Business.

**52.**

During the first week of October 2020, Jennifer Campbell and Cliff Davis indicated to Peter Hwang's managers that they would provide QuickBooks, invoice, and computer training, but no such training occurred.

**53.**

During the second week of October 2020, Cliff Davis told Peter Hwang's managers that he would install QuickBooks and provide training. But that training again did not occur.

**54.**

During the third week of October 2020, Jennifer Campbell told Peter Hwang's managers that she would be present in-person to train them four times a week, specifically, on Wednesdays, Thursdays, Saturdays, and Sundays for the duration of the training.  Between the third week of October and November 9, Jennifer Campbell only came to the Business four times and offered no training to Peter Hwang's managers.

**55.**

Around this time Peter Hwang noticed that Jennifer Campbell and Cliff Davis had stopped putting effort into the smooth transition of the Business to Peter Hwang. Peter Hwang, not having access to the Business operation and purchasing account, had to use his personal money to purchase inventory for the Business.

**56.**

Peter Hwang even used his own funds to pay off a balance on a Business credit card.

**57.**

Unfortunately, during the first few days of November 2020 the relationship between the Parties began to deteriorate. Jennifer Campbell began to contact vendors to inform them of the ownership change. Jennifer Campbell and Cliff Davis blocked access to QuickBooks, accounting documents, and vendor checks.

**58.**

By November 9, 2020, Peter Hwang's managers noticed that all vendor checks had been removed from the Business by Jennifer Campbell and Cliff Davis.

**59.**

On or about November 9, 2020, Jennifer Campbell and Cliff Davis asked Peter Hwang's managers to work for them. When Peter Hwang's managers conveyed their allegiance to Peter Hwang, they were told by Jennifer Campbell and Cliff Davis not to return to the Business and were thereafter denied access to the Business. Without provocation or cause, Jennifer Campbell and Cliff Davis also denied access to the Business to Peter Hwang until after the anticipated Second Closing.

4823-9903-9485 v1

**60.**

Notwithstanding his deteriorating relationship with Jennifer Campbell and Cliff Davis, Peter Hwang, considering the time and millions of dollars he had already invested into the Business, opted to proceed to the Second Closing and an attempt at reconciliation of affairs and finances with Jennifer Campbell.

**61.**

The firm date of the Second Closing still looming, on or about November 30, 2020, Peter Hwang and Jennifer Campbell executed an Addendum to the Agreement extending the final closing date to December 31, 2020.

**62.**

Also, on or about November 30, 2020, Jennifer Campbell and Peter Hwang executed an Addendum to the Agreement replacing the Agreement's non-compete language with a Confidentiality and Non-Compete Agreement. The November 30, 2020 Addendum and the Confidentiality and Non-Compete Agreement are attached hereto *in globo* as Exhibit "M."

**63.**

Peter Hwang worked in furtherance of a final close and reconciliation of accounting on December 31, 2020, while Jennifer Campbell and Cliff Davis put up numerous obstacles to completing the final reconciliation portion of the transaction.

**64.**

Even though Peter Hwang's managers were added to the Business payroll, they were never properly compensated for the work that they performed before their access to the Business was denied. Jennifer Campbell and Cliff Davis conspired to without payment or underpay Peter Hwang's managers for their work at the Business. Peter Hwang has also not been properly

compensated for his work at the Business during the transitional operation period, and even had a check cancelled after it was issued to him.

**65.**

During the transitional ownership period from the October 1, 2020 closing and the December 31, 2020 Second Closing, Peter Hwang's ownership-and-operation-access-and-entitlements were revoked by Jennifer Campbell and others acting in conjunction with her or on her behalf. His access to the Business bank accounts was removed, and he was further denied access to the Business credit card statements, point of sale system, security system, and tangible records.

**66.**

Peter Hwang was unable to confirm the proper collection, application, or deposit of Business revenue. He was also denied access to QuickBooks and to the Business accounts payable, and unable to monitor the financial status of the Business.

**67.**

The Agreement required Seller to maintain operation of the Business in the regular course of business, in same manner as it was historically conducted, and not to violate the terms of any business contracts with third parties, including vendors.

**68.**

From October 1, 2020 through December 31, 2020 Jennifer Campbell and Cliff Davis' operational conduct deviated substantially from the regular course. For example, Jennifer Campbell and/or Cliff Davis removed computers and business records from the Business.

**69.**

Jennifer Campbell and Cliff Davis refused to cooperate in the business lease negotiations between Peter Hwang and the business landlord, as required by the agreement, which untimely

14

and insufficient cooperation resulted in increased obligations for the business, increased rent, and far more out-of-pocket security deposit for Peter Hwang. Jennifer Campbell even failed to participate in an agreed conference call with the landlord to resolve certain lease-related issues. More specifically, the business landlord required Peter Hwang to deposit an entire year's rent, $408,000.00, in escrow as a security deposit to secure the new business lease.

**70.**

During the transitional operation period from the first to the Second Closing, Cliff Davis intervened and interfered with Business operations. At all times pertinent Cliff Davis directed the duties and activities of Business employees.

**71.**

Despite all the impediments created by Jennifer Campbell and Cliff Davis and those acting on their behalf, Peter Hwang was finally able to complete the December 31, 2020 closing.

**72.**

Neither Jennifer Campbell nor Cliff Davis showed up at the December 31, 2020 Second Closing.

**73.**

Following the December 31, 2020 Second Closing, Peter Hwang had to invest considerable amounts of time, money, and resources into resolving the numerous breaches of the Agreement by Jennifer Campbell, many of which have still not resolved.

**74.**

Peter Hwang was not timely provided with the Business safe key, bank account access information, company registration information, other passwords and access identification codes,

15

access to the Business point of sale system, transfer of the merchant account and EBT systems, as required by the Agreement.

**75.**

Peter Hwang was deprived of a reasonable opportunity to reconcile certain revenue and accounting matters, and he was not assisted in the facilitation or timely transition of numerous licenses and permits required by the Business as required by the Agreement, the securing of which cost significant additional sums of money to Peter Hwang

**76.**

Even after the Second Closing Cliff Davis and Jennifer Campbell continued to remotely monitor and access Business computer systems and control various accounts.

**77.**

Cliff Davis unilaterally terminated numerous Business contracts and relationships, including but not limited to the Tilapia permit, Lottery, ATC permit, and others.

**78.**

To date, Jennifer Campbell still has not produced numerous items required by the Agreement to which Peter Hwang is contractually entitled and legally required to possess and maintain, including but not limited to computer programs and software, databases, electronic and manual records, ordinary business records, accounting records, payroll records, time cards, employee files, employment-related forms and filings, tax returns, tax filings, gross receipts, portions of the employee training manual and handbook, and other in-store operations manuals.

**79.**

Jennifer Campbell failed to satisfy certain vendor and accounts payable obligations, which have resulted in certain vendors requiring new and additional deposits, while other matter have been referred to collections.

**80.**

To date there has been no true-up or financial reconciliation of the Purchase Price as required by the Agreement because Jennifer Campbell has continued to refuse to provide the requisite documents to Peter Hwang and to the Business accountant Ellis Roussel.

**81.**

Months after the December 31, 2020 closing Jennifer Campbell and Cliff Davis continued to create problems for Peter Hwang. In addition to withholding Business revenue, refusing to transfer control of certain accounts, and failing to cooperate with reasonable requests of Peter Hwang, Jennifer Campbell and Cliff Davis interfered with Business employee's peaceful possession of rented residences.

**82.**

Cliff Davis owns and operates two rental businesses in Gretna, Louisiana, one involving a residential property located at 2941 Westside Drive, and the other relating to a residential property located at 2425 Oxford Place #154. Numerous Business employees resided at the rental properties owned by Cliff Davis.

**83.**

Intentionally interfering with Business employees' ability to live peacefully at their residences and work at the Business, Cliff Davis, on the coldest nights of the year, during the historical deep freeze of February 15 and 16, 2021, shut off the utilities to the residences in an overt attempt to constructively evict Business employees.

**84.**

After Peter Hwang spent significant time and money to remedy the situation, Cliff Davis again had the power and utilities shut off on February 17, 2021.

4823-9903-9485 v1

**85.**

Cliff Davis refused to negotiate employee residence rentals with Peter Hwang and advised Business employee tenants that he would change the locks and turn of all utilities. He even arranged for his contractors to show up at the Business employees' residences and attempt to physically evict them.

**86.**

The unprofessional tactics employed by Cliff Davis only escalated, and on March 1, 2021 one of Peter Hwang's managers had to call the police to protect the interests and physical well-being of the Business employees residing at 2941 Westside Drive. Peter Hwang's manager made a police report with the Jefferson Parish Sheriff's office to document the incident.

**87.**

Jennifer Campbell and Cliff Davis also conspired to misrepresent certain values and figures to Peter Hwang, thereby presenting false information and enticing him to proceed with a purchase under false pretense.

**88.**

More particularly, Jennifer Campbell and Cliff Davis represented to Peter Hwang that the outstanding accounts payable at the time of the October 1, 2020 closing was $500,000.00 when it was actually closer to $1,400,000.00. This misrepresentation resulted in a diminished value and increased liability of the Business.

**89.**

Jennifer Campbell and Cliff Davis represented to Peter Hwang that the inventory value at the time of the October 1, 2020 closing was $1,250,000.00, when in fact it was much closer to $950,000.00, and very likely even less. This misrepresentation resulted in a diminished value of

4823-9903-9485 v1

the Business and Peter Hwang is entitled to an adjustment of the Purchase Price per the terms of the Agreement.

<u>**CLAIMS AGAINST JENNIFER CAMPBELL AND CLIFF DAVIS,**</u>
**<u>INDIVIDUALLY AND COLLECTIVELY</u>**

**<u>FIRST CAUSE OF ACTION: FRAUD</u>**

**90.**

The allegations of Paragraph 1 through 89 are incorporated by reference as if fully set forth herein.

**91.**

Jennifer Campbell and Cliff Davis intentionally and knowingly misrepresented and/or suppressed material facts from Peter Hwang with the intent to induce Peter Hwang to rely on such misrepresentations and/or suppressions of fact.

**92.**

In reliance on the misrepresentations and suppressions of material facts by Jennifer Campbell and Cliff Davis, Peter Hwang paid $5,857,500.00 as consideration for the purchase, the final Purchase Price, of Jennifer Campbell's membership interest in the Business.

**93.**

Upon information and belief, despite Peter Hwang's requests for a true-up and other reconciliation of the Purchase Price based on true and correct data, there has been no action on behalf of Jennifer Campbell or Cliff Davis to remedy their fraudulent misrepresentations.

**94.**

The conduct of Jennifer Campbell and Cliff Davis as set forth herein constitute fraud, entitling Peter Hwang to recover damages, including the return of his payments in excess of the

value of the Business, a credit for all overpayments, with interest and loss of use on the funds so paid.

## SECOND CAUSE OF ACTION: FRAUDULENT INDUCEMENT

### 95.

The allegations of Paragraph 1 through 94 are incorporated by reference as if fully set forth herein.

### 96.

In the course of his negotiations prior to the October 1, 2020 closing date, Peter Hwang, Jennifer Campbell, and Cliff Davis developed a relationship of confidence that caused Peter Hwang to reasonably rely upon Jennifer Campbell and Cliff Davis' assertions and representations.

### 97.

Peter Hwang was induced to spend $5,857,500.00 for the purchase of Jennifer Campbell's membership interest in the Business, among other sums, based on the fraudulent misrepresentations of Jennifer Campbell and Cliff Davis.

### 98.

Jennifer Campbell and Cliff Davis made the following fraudulent misrepresentations, more fully detailed above, in addition to others that may be learned through the course of these proceedings:

1. Defendants knowingly misrepresented and overstated the gross revenues arising from the operations of the Business;

2. Defendants knowingly misrepresented and overstated the net revenues arising from the operation of the Business;

3. Defendants knowingly misrepresented and overstated the value of the Business inventory;

4. Defendants knowingly misrepresented the total of accounts payable by the Business;

5.      Defendants knowingly misrepresented the Business' revenue-tax obligations and responsibilities; and

6.      Defendants knowingly misrepresented the Business' payroll obligations and responsibilities, included payroll taxes.

**99.**

The fraudulent misrepresentations made by Jennifer Campbell and Cliff Davis were made with the intent of gaining an unjust advantage over Peter Hwang, for which Peter Hwang has sustained significant damages.

**100.**

The fraudulent misrepresentations made by Jennifer Campbell and Cliff Davis substantially influenced Peter Hwang's decision to purchase the Business and Jennifer Campbell's membership interest in the Business. Had Peter Hwang known that the representations made by Jennifer Campbell and Cliff Davis were false, Peter Hwang may not have completed the purchase.

**101.**

As a result of Jennifer Campbell's and Cliff Davis' individual and collective fraudulent misrepresentations, Jennifer Campbell and Cliff Davis are liable unto Peter Hwang jointly, severally, and *in solido*, for a reduction in the Purchase Price, damages sustained as a result of their actions, and attorneys' fees expended in connection with these proceedings.

**THIRD CAUSE OF ACTION: LOUISIANA UNFAIR TRADE PRACTICES ACT**

**102.**

The allegations of Paragraph 1 through 101 are incorporated by reference as if fully set forth herein.

**103.**

The misrepresentation, deception, and/or suppression of material facts by Jennifer Campbell and Cliff Davis such that Peter Hwang relied on said misrepresentation and/or

21

suppressions of material fact and sustained damages, including the loss of his $5,857,500.00, and other amounts which shall be shown, with interest and loss of use, were unfair and deceptive acts and practices in the conduct of trade and commerce.

104.

The conduct of Jennifer Campbell and Cliff Davis as described herein violated the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, et seq., entitling Peter Hwang to recover damages, including the loss of his Purchase Price, overpayments, and other amounts, with interest and loss of use. Peter Hwang is also entitled to attorneys' fees and costs pursuant to LUTPA.

105.

As a direct result of the unfair and deceptive acts of Jennifer Campbell and Cliff Davis, Peter Hwang has suffered considerable mental anguish and distress, entitling him to additional damages.

**FOURTH CAUSE OF ACTION: CONVERSION**

106.

The allegations of Paragraph 1 through 105 are incorporated by reference as if fully set forth herein.

107.

Between October 1, 2020 and October 9, 2020 Peter Hwang paid at least $4,865,000.00 to purchase Jennifer Campbell's membership interest in the Business.

108.

By December 31, 2020 Peter Hwang had paid at least $5,857,500.00 to Jennifer Campbell towards the Purchase Price of her membership interest in the Business.

22

**109.**

Despite the contractual requirement of a true-up and Purchase Price reconciliation, Peter Hwang has received no such reduction in the amount of money he paid to Jennifer Campbell, and Jennifer Campbell and Cliff Davis have intentionally ignored all requests to honor their contractual obligations to determine if a true-up is owed to Peter Hwang. Notwithstanding the terms of the Agreement, Cliff Davis acknowledged the true-up requirement in writing, on November 13, 2020.

**110.**

To the extent that the funds paid to Seller by Peter Hwang were in excess of the proper Purchase Price, adjusted for the true-up and for fraudulent misrepresentations made by Jennifer Campbell and Cliff Davis, the amount in excess of the proper Purchase Price, and the application, use, or misuse of those funds by Jennifer Campbell and/or Cliff Davis constitute conversion, entitling Peter Hwang to recover damages, including the return of its excess payment, with interest, and loss of use of the funds so paid.

**111.**

Alternatively, if Jennifer Campbell or Cliff Davis held, withheld, or improperly used other funds belonging to Peter Hwang, such as Business revenue after the closing of the purchase, then Peter Hwang is entitled to the return of those funds with interest.

**112.**

Jennifer Campbell and Cliff Davis have continued to prohibit Peter Hwang and his managers' access to Business equipment, software, records, and other assets which further constitutes conversion of the Business' property.

## **FIFTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACT**

### **113.**

The allegations of Paragraph 1 through 112 are incorporated by reference as if fully set forth herein.

### **114.**

Jennifer Campbell and/or Cliff Davis were both aware of the fact that Peter Hwang aimed to acquire Jennifer Campbell's membership interest in the Business.

### **115.**

Jennifer Campbell and Cliff Davis were both aware of the Business' contractual dealings and relationships with its many vendors, licensors, and other contractors and providers.

### **116.**

Jennifer Campbell and Cliff Davis knowingly, willfully, and intentionally interfered with, cancelled, frustrated, or otherwise impeded the contractual relationship with the Business' landlord and many of the Business' vendors and licensors, including but not limited to providers of goods and services, produce, meat, groceries, and licensing or permitting agencies for the sale of alcohol and tobacco, live seafood, lottery tickets, and other contractual relationships enjoyed by the Business before Peter Hwang became the sole owner of the Business.

### **117.**

As a result of the knowing, willful, and intentional interference by Jennifer Campbell and Cliff Davis with various contracts between the Business and it landlord, vendors, licensors, and permitting agencies, Peter Hwang has suffered significant damages for which he is entitled to recover from Jennifer Campbell and Cliff Davis.

4823-9903-9485 v1

## **SIXTH CAUSE OF ACTION: DETRIMENTAL RELIANCE**

### **118.**

The allegations of Paragraph 1 through 117 are incorporated by reference as if fully set forth herein.

### **119.**

Jennifer Campbell and Cliff Davis made misrepresentations regarding the following:

**1.** Defendants knowingly misrepresented and overstated the gross revenues arising from the operations of the Business;

**2.** Defendants knowingly misrepresented and overstated the net revenues arising from the operation of the Business;

**3.** Defendants knowingly misrepresented and overstated the value of the Business inventory;

**4.** Defendants knowingly misrepresented the total of accounts payable by the Business;

**5.** Defendants knowingly misrepresented the Business' revenue-tax obligations and responsibilities; and

**6.** Defendants knowingly misrepresented the Business' payroll obligations and responsibilities, included payroll taxes.

### **120.**

Peter Hwang relied upon the misrepresentations made by Jennifer Campbell and Cliff Davis when deciding to purchase the Business and ultimately when purchasing Jennifer Campbell's membership interest in the Business.

### **121.**

Peter Hwang's reliance upon the misrepresentations made by Jennifer Campbell and Cliff Davis were reasonable and justified.

4823-9903-9485 v1

**122.**

Peter Hwang changed his position, by purchasing Jennifer Campbell's membership interest in the Business, to his detriment based upon the misrepresentations made by Jennifer Campbell and Cliff Davis.

**123.**

Jennifer Campbell and Cliff Davis are liable unto Peter Hwang jointly, severally, and *in solido*, for all expenses incurred and damages suffered as a result of Peter Hwang's reliance upon Jennifer Campbell's and Cliff Davis' misrepresentations.

### CLAIMS AGAINST JENNIFER CAMPBELL, INDIVIDUALLY

### SEVENTH CAUSE OF ACTION:
### BREACH OF CONTRACT/BAD FAITH BREACH OF CONTRACT

**124.**

The allegations of Paragraph 1 through 123 are incorporated by reference as if fully set forth herein.

**125.**

From November 27, 2019 through November 30, 2020 Jennifer Campbell entered into and executed various contracts and addenda, as more fully detailed above, with Peter Hwang pertaining to the purchase and sale of the Business and ultimately her membership interest in the Business.

**126.**

The Agreement and its Addenda, as more fully detailed above, constitute a contract between Jennifer Campbell and Peter Hwang.

4823-9903-9485 v1

**127.**

Pursuant to the Agreement between Jennifer Campbell and Peter Hwang, Jennifer Campbell, as Seller, agreed to adhere to certain obligations and conduct, as well as not to engage in certain conduct.

**128.**

As more fully detailed above, and more of which will be shown through the duration of these proceedings, numerous acts and omissions of Jennifer Campbell constitute bad faith breach of contract and willful default under the agreement, including but not limited to selling her membership interest free and clear of any encumbrance at closing, including debts, accounts payable, claims, and taxes due, failure to produce documents to Peter Hwang prior to closing, failure to train, failure to facilitate transfer of operations, failure to conduct the Business in the same manner as presently conducted and operated, failure to conduct the Business in accordance with all laws, rules, and regulations, failure to abstain from violating terms of business contracts with third parties, failure to deliver the assets of the Busines in good-working order, and failure to adhere to the requirements of the confidentiality and non-compete terms of the Agreement.

**129.**

Jennifer Campbell has breached, or alternatively breached in bad faith, numerous of her contractual obligations to Peter Hwang.

**130.**

Jennifer Campbell's breach of contract entitles Peter Hwang to recover damages including but not limited to money damages, specific performance, and attorneys' fees.

4823-9903-9485 v1

## EIGHTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

### 131.

The allegations of Paragraph 1 through 130 are incorporated by reference as if fully set forth herein.

### 132.

Pursuant to her contractual relationship with Peter Hwang, Jennifer Campbell had a legal duty to Peter Hwang to supply correct and accurate information to Peter Hwang concerning the Business.

### 133.

As set forth above in greater detail Jennifer Campbell knowingly supplied incorrect and inaccurate information, and omitted pertinent information, in breach of her legal duty.

### 134.

Due to the nature of the negligent and intentional misrepresentations made by Jennifer Campbell, Peter Hwang was unable to discover that the information supplied to him was false until after his purchase was complete.

### 135.

As is evident by the nature of Jennifer Campbell's negligent and intentional misrepresentations, Jennifer Campbell acted in bad faith.

### 136.

As a result of her breach of legal duty, Peter Hwang has suffered significant damages for which Jennifer Campbell is liable.

## NINTH CAUSE OF ACTION: DETRIMENTAL RELIANCE

### 137.

The allegations of Paragraph 1 through 136 are incorporated by reference as if fully set forth herein.

### 138.

In conjunction with the purchase of Jennifer Campbell's membership interest in the Business, Peter Hwang paid more than $5,857,500 to the account of Jennifer Campbell, with the agreed upon understanding that a true-up would be calculated after the Closing that would potentially result in a refund of a certain amount of funds to Peter Hwang.

### 139.

A portion of those funds paid were in excess of the proper value of the purchased interest secondary to misrepresentations made to Peter Hwang. Jennifer Campbell has continued to refuse to cooperate in any fashion with the Business' accountant to determine what the value of the true up will be.

### 140.

The use of those funds to the benefit of Jennifer Campbell have unjustly enriched Jennifer Campbell to Peter Hwang's detriment, entitling Peter Hwang to recover damages from Jennifer Campbell.

## DAMAGES

### 141.

As a direct and proximate cause of Defendants' actions as described herein, Peter Hwang suffered the following damages, among others that will be shown:

(a)     Loss of revenue, sales, and profits;

(b)     Additional costs and expenses incurred to operate the Business;

(c)     Inflated purchase price for the Business;

(d)     Damages associated with improperly valued inventory;

(e)     Damages associated with delivery of Business assets in poor condition;

(f)     Damages for mental distress and anguish; and

(g)     Other damages and expenses proximately caused by Defendants, costs to be proven.

## 142.

As a result of Defendants' actions and omissions as described herein, Peter Hwang is entitled to specific performance under the Agreement, requiring the transfer of all documents, equipment, funds, and property of the Business that Jennifer Campbell and Cliff Davis have intentionally withheld from Peter Hwang in contravention of the Agreement or in law.

### PRAYER FOR RELIEF

**WHEREFORE**, the premises considered, plaintiff Peter Hwang respectfully prays that after due proceedings be had, that a judgment be rendered in favor of Peter Hwang against defendants Jennifer Campbell and Cliff Davis, awarding Peter Hwang the monetary damages to which he is entitled, with interest, and all other damages that are just under the facts, including attorneys' fees, specific performance, costs and expenses, and all such other relief as is appropriate at law and equity.

Respectfully submitted:

*/s/ Stephen C. Hanemann*

STEPHEN C. HANEMANN (#28069)
TOD J. EVERAGE (#32445)
GABRIEL G. SILVA (#38893)
**KEAN MILLER LLP**
First Bank and Trust Tower
909 Poydras St., Suite 3600
New Orleans, LA 70112
(504) 585-3050
(504) 585-3051
stephen.hanemann@keanmiller.com
tod.everage@keanmiller.com
gabriel.silva@keanmiller.com
Attorneys for Peter Hwang

31